| Fill in this information to identify the case: | |
|---|---|
| Debtor name | **ALEXANDER DEMOLITION AND HAULING, INC.** |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number (if known) | **2:23-bk-15815-DS** |

☒ Check if this is an amended filing

Official Form 425A

**Second Amended Plan of Reorganization for Small Business Under Chapter 11**                    02/20

## GENERAL DISCLAIMERS

THIS DOCUMENT AND THE ATTACHED PLAN EXHIBITS SHOULD BE READ CAREFULLY. THEY EXPLAIN THE TREATMENT THAT CREDITORS AND INTEREST HOLDERS CAN EXPECT TO RECEIVE UNDER THE PLAN, IF THE PLAN IS CONFIRMED BY THE COURT. THE DEBTOR'S FINANCIAL STATEMENTS, PROJECTIONS AND OTHER FINANCIAL DATA RELIED ON TO FORMULATE THIS PLAN ARE IN THE PLAN EXHIBITS. THE DEBTOR HAS ALSO UNDERTAKEN EFFORTS TO CONFIRM THAT EACH OF THE ASSUMPTIONS UNDERPINNING THE PROJECTIONS IS REASONABLE AND SUPPORTED BY RELIABLE ECONOMIC DATA.

THE DEBTOR HAS UNDERTAKEN REASONABLE EFFORTS TO ASCERTAIN THAT EACH OF THE STATEMENTS MADE IN THE PLAN EXHIBITS IS TRUE AND CORRECT IN EVERY MATERIAL RESPECT, BUT NO ASSURANCE CAN BE GIVEN THAT THE STATEMENTS ARE WITHOUT ERROR.

UNLESS THE COURT ORDERS OTHERWISE, NO STATEMENTS ARE AUTHORIZED CONCERNING THE DEBTOR OR THE PLAN THAT ARE NOT CONSISTENT WITH INFORMATION CONTAINED IN THE PLAN.

**Background for Cases Filed Under Subchapter V**

**A. Description and History of the Debtor's Business**

Alexander Demolition commenced its bankruptcy case on September 7, 2023 (the "Petition Date"). Alexander Demolition is operating in the ordinary course of business as permitted by Bankruptcy Law. Alexander Demolition operates as a contractor and bids on projects with subcontractors doing part of the work.

The Debtor had been operating for several years. However, since that time, the Debtor's slim margins have been exhausted by attorneys' fees and costs of defending labor law actions. In light of this, the Debtor was on the brink of shutting down for good, but instead decided to revive its moribund business, focus on demolition and hauling projects and reorganize its financial affairs.

The Debtor's principal assets are the knowhow of its principal and goodwill.

The Debtor allegedly has a total of approximately **$21,405.55** in secured claims, **$9,794.19** in priority claims, and **$155,723.07** in general unsecured claims, all subject to review during the claim objection process.

**B. Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as Exhibit **1**.

**C. Ability to make future plan payments and operate without further reorganization**

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.

The Plan Proponent has provided projected financial information as Exhibit **2**.

The Plan Proponent's financial projections show that the Debtor will have Projected Disposable Income (as defined by § 1191(d) of the Bankruptcy Code) from its operations for the period described in § 1191(c)(2) of three years of approximately $123,301 subtracting 10% for contingencies. The projected financial information also shows that the projected disposable Income is not reasonably necessary for the payment of the expenditures necessary for the operation of the business of the Debtor; however, the Debtor must still pay the administrative fees of this case, which

Debtor   **ALEXANDER DEMOLITION AND HAULING, INC.**                    Case number (*if known*)  **2:23-bk-15815-DS**
    ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾                              ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
    Name

are required for the operation or continuation of the business, which have not yet been determined, but should be around $50,000. Nevertheless, the Projections provide support for the Debtor's determination that the Plan is feasible and that the funds necessary to make the Plan Payments required under the Plan will be available.

The final Plan payment is expected to be paid three years from the Effective Date.

> **You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

### Article 1: Summary

This Plan of Reorganization (the *Plan*) under chapter 11 of the Bankruptcy Code (the *Code*) proposes to pay creditors of the *Debtor* from cashflow from operations.

This Plan provides for:   <u>1</u> class of priority claims;

<u>1</u> class of secured claims;

<u>1</u> class of non-priority unsecured claims; and

<u>1</u> class of equity security holders.

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately **$61,482**. This amount may change as part of the plan confirmation process. This Plan also provides for the payment of administrative and priority claims. All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney if you have one. (If you do not have an attorney, you may wish to consult one.)**

### Article 2: Classification of Claims and Interests

| | | |
|---|---|---|
| 2.01 | **Class 1** ......................... | All allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2), ["gap" period claims in an involuntary case under § 507(a)(3),] and priority tax claims under § 507(a)(8)). |
| | | The taxing authorities and the claims of employees enjoying priority treatment are paid in full. See Exhibit 3. |
| 2.02 | **Class 2** ......................... | The claim of **Ford Credit (POC 5)**, to the extent allowed as a secured claim under § 506 of the Code: |
| | | As further detailed below, the holder will receive payment of the present value of its collateral in 36 monthly payments, which, at an interest rate of 8.9%, will be for $674.69, or as otherwise approved by the Court. |
| 2.17 | **Class 3** ......................... | All non-priority unsecured claims allowed under § 502 of the Code. See Article 3 and Exhibit 3 for a chart listing all claims, including claims in this class setting forth information including the amount of the payments each claimant will receive in full satisfaction thereof. The amounts not allowed as secured under § 506 of the Code for Class 2, if any, is also an unsecured claim in this class. |
| 2.18 | **Class 4** ......................... | All non-priority unsecured claims allowed under § 502 of the Code in the amount of $500 or less OR as to which its holder elects to receive $500 in full satisfaction thereof. See Exhibit 3 for a chart listing all claims, if any. In fact, at this point there are no claims in this class but holders of claims may elect to receive payment under this class instead of any other class. |
| 2.19 | **Class 5** ......................... | The interests of the holders of equity in the Debtor in property of the estate. |

| Debtor | **ALEXANDER DEMOLITION AND HAULING, INC.** | Case number (*if known*)  **2:23-bk-15815-DS** |
|---|---|---|
| | Name | |

## Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

| | | |
|---|---|---|
| 3.01 | **Unclassified claims** | Under section § 1123(a)(1), administrative expense claims, including "gap" period claims in an involuntary case allowed under § 502(f) of the Code, and priority tax claims are not in classes. |
| 3.02 | **Administrative expense claims** | Each holder of an administrative expense claim allowed under § 503 of the Code, [and a "gap" claim in an involuntary case allowed under § 502(f) of the Code,] will be paid on the Effective Date or as may be otherwise agreed upon by the holder of the claim and the Debtor, including in a form, amount, and timing of distribution, consistent with section 1191(e) of the Code. |
| 3.03 | **Priority tax claims** | See Exhibit 3 for the payment with 8% interest for holders of priority tax claims. |
| 3.04 | **Statutory fees** | All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date. |
| 3.05 | **Prospective quarterly fees** | All quarterly fees required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7), if any, will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code |

## Article 4: Treatment of Claims and Interests Under the Plan

**4.01  Claims and interests shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - **Priority claims** excluding those in Article 3 | ☒ Impaired<br>☐ Unimpaired | Tax claims in this class are labelled as belonging to Class 1 for convenience only. Tax claims are not "classified" within the meaning of Section 1123(a)(1) and are not entitled to vote, while other members of this class are, in fact, entitled to vote. The Debtor will pay a total of $1,238.21 to the Internal Revenue Service, Franchise Tax Board and the California Department of Tax & Fee, all with 8% interest (or the current interest at the time of plan confirmation as set by the Court).  There are no other priority claims. |
| Class 2 – **Secured claim of Ford Credit (POC 5).** | ☒ Impaired<br>☐ Unimpaired | Proof of Claim # 5<br>Value of Collateral: $26,425<br>Collateral Description = 2023 Ford Maverick<br>Allowed Secured Amount = $21,405.55.<br>Priority of lien = First<br>Total Allowed Claim Amount = $21,405.55<br>Pre-pet. arrearage = Not Applicable<br>Monthly payment = $674.69<br>Pmts Begin = Effective Date or as ordered by the Court. |

Debtor  **ALEXANDER DEMOLITION AND HAULING, INC.**                    Case number (*if known*)  **2:23-bk-15815-DS**

Name

| | | | |
|---|---|---|---|
| | | | Pmts End = 35 months after first payment was made (36 payments in total)<br>Interest Rate = 8.9%<br>The Debtor reserves the right to sell or refinance the collateral allegedly securing this claim and repay the Allowed Secured Amount or Total Allowed Claim, as applicable, to the pertinent creditor in full satisfaction of the secured obligation.  The lien securing the pertinent Total Allowed Claim or Total Allowed Claim amount, as applicable, shall be extinguished and expunged immediately upon such payment. Nevertheless, such payment shall obligate the claimholder to reconvey or release its lien in conjunction with such transaction without further order of this Court. |
| **Class 3 – Non-priority unsecured creditors** | ☒ Impaired<br>☐ Unimpaired | | An aggregate $62,000.00 to all claimholders over 36 months due and payable every 3 months, who shall receive a proportionate share. This amount may increase as required by law or pursuant to order of the Court. See Exhibit 3 for a chart listing all claims |
| **Class 4 – Convenience Class of Non-priority unsecured creditors** | ☒ Impaired<br>☐ Unimpaired | | Paid in full on Effective Date. See Exhibit 3 for a chart listing all claims |
| **Class 5 - The interests of the holders of equity in property of the estate** | ☐ Impaired<br>☒ Unimpaired | | All of the Debtor's equity interests shall vest in the Debtor's members as of the Petition Date in the same percentage they held as of that time. |

**Article 5: Allowance and Disallowance of Claims**

5.01  **Disputed Claim**    A *disputed claim* is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either:

(i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

(ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

The Debtors do not currently anticipate filing claim objections after plan confirmation except as mentioned in Exhibit 3.  Unless a creditor's claim has been expressly allowed by order of the bankruptcy court, no creditor should rely or expect that his/her claim will be allowed in full when voting on the Plan.  Anticipated Claim objections and litigation include, but are not limited to:

1.      Duplicate Claims.

2.      Claims which have been paid in full.

3.      Claims lacking adequate documentation or support.

4.      Untimely Claims.

5.      Claims as to which there is a disputed amount because of errors in the revenue distribution.

6.      Claims which are not supported by the Debtor's books and records, or in excess thereof.

7.      Claims which are unenforceable against the Debtor and/or property of the estate, under any agreement or applicable law.

| Debtor | **ALEXANDER DEMOLITION AND HAULING, INC.** | Case number (*if known*) **2:23-bk-15815-DS** |
|---|---|---|
| | Name | |

8.      Claims for improper or unreasonable interest, attorneys' fees, charges, costs, etc.

9.      Claims for interest which are unmatured as of the petition date.

10.      Claims of a lessor which exceed the §502(b)(6) cap.

11.      Claims of any entity from which property is recoverable under section 542, 543, 550, or 553 or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a), unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553.

12.      Setoff Claims asserted by the government which are premised upon the government being a single entity for the purposes of setoff.

13.      Equipment lessor Claims which are disguised security agreements.

14.      Bodily injury claims in which the claimant has failed to adequately establish the Debtor's legal liability and/or the claimant's damages.

15.      Claims for contingent claims for reimbursement, indemnity or contribution, or any entity that asserts a right of subrogation to the rights of such creditor.

16.      Claims which may be subordinated under §§509 or 510.

The foregoing list is not intended to be exhaustive of all potential claim objections. Rather, the Debtor seeks to place all creditors on notice that the Debtor reserves all rights to bring Claim Objections on any and all grounds.  For now, if it gets sufficient support for its Plan, the Debtor does not anticipate filing motions to object to the allowance of claims, except for late filed claims, if any, and only if necessary.

| 5.02 | **Delay of distribution on a disputed claim** | No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order. |
|---|---|---|
| 5.03 | **Settlement of disputed claims** | The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. |

### Article 6: Provisions for Executory Contracts and Unexpired Leases

| 6.01 | **Assumed executory contracts and unexpired leases** | (a)  The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date:

Debtor wishes to assume: its current month to month lease, which is current. |
|---|---|---|

(b)  Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.

A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (**30**) days after the date of the order confirming this Plan.

### Article 7: Means for Implementation of the Plan                                                    1,

1.      The Plan will be funded by the following:  The Debtor's disposable income from business earnings.  Such funds will be utilized monthly as follows:

| Administrative | - | To Be Determined |
|---|---|---|
| Priority Claims (Class 1) | - | $38.54 |

Debtor    **ALEXANDER DEMOLITION AND HAULING, INC.**                 Case number (*if known*)  **2:23-bk-15815-DS**

Name

| | | |
|---|---|---|
| Classes 2 | - | $674.69 |
| Class 3-4 | - | $1,722.22 (but one-time payments of $500 will be made to claimants who elect to be treated as convenience class members) |
| Class 5 | - | $0 (equity will re-vest in the same members) |
| Total | | $2,435.46 |
| Executory Contracts | | $0.00 |

a.      Payments on the Effective Date. The Debtor shall make the Plan Payments and all other payments contemplated under the Plan. It is estimated that under the Plan, the Debtor will be required to pay approximately $2,435.46 on the Effective Date. Based on the Projections, the Debtor expects that it will have approximately $17,000 in cash, which is sufficient to make the Plan Payments required to be made on the Effective Date. If the Court confirms the Plan pursuant to section 1191(b), Administrative Expense Claims shall be paid through the Plan from projected Disposable Income in accordance with section 1191(e). Allowed Administrative Expense Claims shall be paid in full before payment to any Class 3 or 4 claims.

b.      Required Plan Payments During the Plan Term. Under section 1191(c), in order for a plan to be "fair and equitable" if confirmed under section 1191(b), the plan must provide that all of the projected Disposable Income of the debtor to be received in the 3-year period will be applied to make payments under the plan.

Under the Plan, the Debtor will make the Plan Payments, as set forth in the Disposable Income Projections, on a quarterly basis to Creditors. Based on the projected financial information, the Debtor expects that it will have Cash sufficient to make each of the Plan Payments required to be made on each of the Required Payment Dates. The Debtor is permitted to prefund any required Plan Payment.

c.      Source of Funds to Make the Plan Payments. Since its formation, the Debtor has demonstrated the ability to generate positive cash flow and disposable income until the unexpected recent downturn. As part of the Plan, the Debtor will retain all or substantially all of the Property of the Estate, continue to operate its business and generate Disposable Income. Over the Plan Term, the Debtor will use the Disposable Income to fund the Plan Payments.

d.      Risk Factors. As with any business plan reliant in part upon the internal generation of funds from operations, there are substantial risks associated with the Debtor's ability to generate funds sufficient to generate the disposable income needed to fund the plan payments.

e.      Payment deferral election. if, as a result of unforeseen market circumstances, extraordinary operating issues, or any other event or circumstance, the Debtor in good faith determines that it does not have Disposable Income sufficient to both (i) pay expenditures necessary for the continuation, preservation, or operation of the business of the Debtor and (ii) make a scheduled Plan Payment, then the Debtor may elect to defer a Plan Payment for one or two quarters. The Debtor may make a Payment Deferral Election no more frequently than once every calendar year.

2.      The Debtor shall maintain a reserve for operating expenses, tax, licenses and fee obligations, and contingency situations of approximately $1,000 per month.  The Debtor may establish a claims reserve in connection with the Plan to, among other things, pay disputed claims upon resolution.

Post-confirmation Management

(a)      Identity:  The President and Chief Executive Officer of the Debtor will continue to be Felipe Davila.

(b)      Post-confirmation Managerial duties: The Debtor will continue to manage its affairs through its President.

Debtor  **ALEXANDER DEMOLITION AND HAULING, INC.**                    Case number (*if known*)  **2:23-bk-15815-DS**

_____
Name

      (c)     Amount of compensation paid pre-petition and to be paid post-confirmation:  The President of the Debtor shall continue to receive a salary from the debtor as he did pre-petition, in the amount of $36,000 per year.

      (d)     Description of expertise:  The President ably managed the Debtor's business prior to the COVID-19 pandemic and subsequent economic instability that has impacted this business.

3.     Disbursing Agent

Name and identity of disbursing agent:  Unless the Court orders otherwise pursuant to the provisions of Subchapter V, the President shall act as the disbursing agent for the purpose of making all distributions provided for under the Plan.  The Disbursing Agent shall serve without bond and shall not receive compensation or reimbursement for services and expenses rendered and incurred in connection with making distributions under the Plan.

---

**Article 8: General Provision**

| | | |
|---|---|---|
| 8.01 | **Definitions and rules of construction** | The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions: |

    a.  The Plan incorporates by reference (i) the definitions set forth in sections 101, 1182 and 1191(d), and (ii) the rules of construction set forth in sections 1191(c) and, again, 102.

    b.  Unless expressly stated to the contrary, all references to a "section" shall mean a section of the Bankruptcy Code.

    c.  Cash: United States Dollars.

    d.  Confirmation Order: The Order of the Bankruptcy Court as entered on the docket confirming the Plan in accordance with the provisions of chapter 11, subchapter V of the Bankruptcy Code.

    e.  All defined words and phrases, whether defined in the Plan or incorporated by reference, are initial capped in the Plan.

| | | |
|---|---|---|
| 8.02 | **Effective Date** | The effective date of this Plan is the first business day of the month following the date that is 14 business days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated. |
| 8.03 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 | **Binding Effect:** | The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| 8.06 | **Controlling Effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of **California** govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |

| Debtor | **ALEXANDER DEMOLITION AND HAULING, INC.** | Case number (*if known*) **2:23-bk-15815-DS** |
|---|---|---|
| | Name | |

| 8.07 | **Corporate Governance** | Section 1123(a)(6) requires that, where applicable, certain provisions be included in the charter of a corporate debtor prohibiting the issuance of non-voting equity securities.  This section does not apply since the Debtor is a limited liability company, not a corporate debtor under non-bankruptcy law. Nevertheless, the debtor will not issue non-voting equity securities. |
|---|---|---|
| 8.08 | **Retention of Jurisdiction** | The Court shall retain jurisdiction to implement and enforce the provisions of the Plan, the Confirmation Order, and otherwise to enter orders in aid of confirmation and implementation of the Plan. |

## Article 9: Discharge

**Discharge since the Debtor is a "corporation" under Subchapter V**

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

> (i) imposed by this Plan; or

> (ii) to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

i. Except as expressly set forth in the Plan, the rights afforded in the Plan and the treatment of all creditors shall be in exchange for and in complete satisfaction, discharge, and release of Claims of any nature whatsoever, including any interest accrued thereon from and after the Petition Date, against the Debtor and the Debtor in Possession, and against any of their assets or properties.

ii. Except as otherwise expressly provided in the Plan, on the Effective Date, all such Claims against the Debtor shall be satisfied, discharged, and released in full. All entities shall be precluded from asserting against the Debtor, its successors, or its assets or properties any other or further Claims based upon any act or omission, transaction, or other activity of any kind or nature that occurred before the Petition Date.

## Article 10: Other Provisions

10.01 **Unclaimed or Undeliverable Plan Distributions.** Payments or other distributions made under the Plan that are unclaimed, unnegotiated or undeliverable for six (6) months after the attempted distribution will revest in the post-confirmation debtor free of restrictions. The Debtor need not attempt to make any further distributions if two straight distributions are unclaimed, unnegotiated or undeliverable for six (6) months and any remaining distributions to which such claimholder would have otherwise been entitled under the Plan will revest in the post-confirmation debtor free of restrictions. Any entitlement to distribution will be barred.

10.02 **Default.** Except as otherwise expressly specified above, if Debtor fails to make any payment required under the Plan, or to perform any other obligation required under the Plan for more than 14 days after the time specified in the Plan, the affected creditor may serve upon Debtor and Debtor's attorney (if any) a written notice of default. The Debtor is in Material Default under the Plan if the Debtor fails within 14 days of the service of such notice of default either: (i) to cure the default or (ii) to obtain from the Court an extension of time to cure the default or a determination that no default occurred. A definition of default in any approved stipulation attached to the Debtor's confirmed Chapter 11 plan of reorganization governs the claim(s) to which such stipulation relates.

Upon the occurrence and continuation of a Material Default, then any party in interest may seek an Order from the Bankruptcy Court after notice and a hearing determining that a Material Default has occurred and is continuing, and the Bankruptcy Court may grant such relief as it deems just and proper. If the Material Default is a default in payment to holders of claims under Class 3, such relief sought by such holders and in exercising its determination of the best interest of creditors and the estate, the Court may include conversion of the Case to chapter 7 and authorization of the chapter 7 trustee to operate the Debtor's business in order to effectuate a sale of assets as a going concern.

10.03 **Effect of Confirmation**. As provided in section 1141, confirmation of the Plan shall result in the following:

Debtor  **ALEXANDER DEMOLITION AND HAULING, INC.**         Case number (*if known*)  **2:23-bk-15815-DS**

_____         _____
Name

a.      *Termination of the Services of the Subchapter V Trustee*. Pursuant to section 1183(c)(1), the Subchapter V Trustee's services are if a plan is confirmed under section 1191(a) as consensual, when the substantial consummation of this Plan has occurred,

b.      *Binding Effect*. As set forth in section 1141(a), upon entry of the Confirmation Order, the provisions of the Plan bind the Debtor, each Creditor and each Holder of Equity Security Interests that is impaired under the Plan. The rights and obligations of any Entity governed by the Plan will be binding upon, and inure to the benefit of, the successors or assigns of such Entity.

c.      *Revesting Property of the Reorganized Debtor*. Except as provided elsewhere in the Plan or the Confirmation Order or § 1186(a), on the Effective Date, each of the following shall occur: (i) all of the property of the estate is to be revested in the Reorganized Debtor;(ii) all of the claims against and interests in third parties that constitute property of the estate is to be revested in the Reorganized Debtor; (iii) the Reorganized Debtor shall have absolute authority to prosecute, waive, adjust or settle any claims without the need for approval by the Bankruptcy Court; and (iv) the Reorganized Debtor shall have the authority to employ such professionals as it deems necessary to prosecute or defend such claims asserted without the need for Bankruptcy Court approval.

**10.04    Exculpation.** Effective upon the entry of the Confirmation Order, only with respect to any acts or omissions from the Petition Date to the date a Chapter 11 plan is confirmed, none of the Debtor, its accountant and staff who assisted in preparation of the Plan and related exhibits, the Debtor's professionals employed in this case (The Orantes Law Firm, P.C. and Giovanni Orantes, Esq.) (collectively, "**Exculpated** Parties") and each an "Exculpated Party"), shall have or incur any liability to any person, including any creditor of the Debtor, for any act or omission in connection with, relating to or arising out of the post-petition formulation, negotiation, implementation, confirmation or consummation of this Plan, or any contract, instrument, release or other agreement or document entered into during the chapter 11 case or otherwise created in connection with this Plan; provided, however, that nothing in this Section shall be construed to release or exculpate any Exculpated Party from willful misconduct or gross negligence.

**10.05    Notice.** Any notice required or permitted to be given hereunder to the Debtor (or Reorganized Debtor after confirmation of a plan of reorganization) shall be sufficient if in writing and if personally delivered, mailed by first class mail (postage prepaid) or by other carrier, and transmitted by electronic mail to the Debtor and its counsel at their current addresses and e-mail addresses noted below.  Delivery of notice by personal delivery shall be effective when so made.  Delivery of notice by mail or carrier shall be effective when deposited in the mail or with the carrier.  Delivery of notice by facsimile or electronic mail shall be effective as of the time stated in any notice that the transmitting party receives confirming successful transmission.  The address for notice of the Debtor or party entitled to notice or its respective counsel may be changed by filing it with the Court in this case or serving on members of classes who are entitled to payment under a confirmed plan of reorganization at the time of such change of address of written notice mailed by first class mail (postage prepaid) or by other carrier.

**10.06    Plan Modification.** The Debtor may modify the Plan at any time before confirmation.  However, the Court may require re-voting on the Plan.  The Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

**10.07    Post-Confirmation Status Report.** Unless otherwise ordered by the court, within 120 days following the entry of the Plan Confirmation Order, the Reorganized Debtor shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan.  The status report shall be served on the United States Trustee, the twenty largest unsecured creditors, and those parties who have requested special notice after the Effective Date.  Further status reports shall be filed every 120 days and served on the same entities.

Respectfully submitted,

**X** /s/ Felipe Davila                                      Felipe Davila _____
   [Signature of the Plan Proponent]              President
                                                                   for **ALEXANDER DEMOLITION AND
                                                                   HAULING, INC.**

**X** /s/ Giovanni Orantes _____          Giovanni Orantes 190060 _____
   [Signature of the Attorney for the Plan        Giovanni Orantes
   Proponent]

# Exhibit 1

| | | | Current Value |
|---|---|---|---|
| CURRENT ASSETS | | | |
| a.    Cash on hand | | | $0.00 |
| b.    Bank Accounts* | | | $32,586.00 |
| TOTAL CURRENT ASSETS | | | **$32,586.00** |
| | | | |
| BUSINESS ASSETS | | | |
| a.    Avoidance actions | $0.00 | | |
| b.    Business value - None other than assets set forth below | $0.00 | | |
| c.    Contractor State License Board Bond ($25,000) - no value | $0.00 | | |
| d.    Accounts receivables - Post-petition accounts receivable balance as of September 7, 2023* | $12,151.78 | | |
| e.    Vehicles (included in machinery) | $0.00 | | |
| f.    Office furniture & Equipment | $1,000.00 | | |
| g.    Right to Sale | $0.00 | | |
| i.    Supplies | $0.00 | | |
| j.    Machinery & Fixtures (including vehicle) | $26,425.00 | | |
| TOTAL FIXED AND BUSINESS ASSETS | | | **$39,576.78** |
| | | | |
| TOTAL ASSETS AT LIQUIDATION VALUE | | | **$72,162.78** |
| Less: | | | |
| Secured Creditors Recovery** | Value | Recovery | |
| From Total Current Asssets | $      - | 0.00 | |
| From Total Fixed and Business Assets | $26,425.00 | $26,425.00 | |
| Total Secured Creditors Recovery | | | $26,425.00 |
| Less: | | | |
| Priority claims, excluding administrative expense claims (but if case were converted administrative fees would reduce amount for unsecured | $9,794.19 | | $9,794.19 |
| Less: | | | |
| Debtor's claimed exemptions (inapplicable in corporate cases) | | | NA |
| Less: | | | |
| Chapter 7 trustee fees and expenses*** | | | $8,932.24 |
| | | | |
| **Total Deductions** | | | $45,151.43 |
| (1)   Balance for unsecured claims (without taking administrative claims into account) | | | $27,011.35 |
| (2)   Total amount of unsecured claims | | | $305,723.07 |

**% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WOULD RECEIVE OR RETAIN IN A CHAPTER 7 LIQUIDATION = 9%**
**\*\*\*\*% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WILL RECEIVE OR RETAIN UNDER THE PLAN: =  20.27%.**

* Debtor projects that it will have approximately **$17,000** from ongoing operations since the insider has not taken compensation or collected rent until the Notice of Setting Insider Compensation was filed with the U.S. Trustee and served without timely objection. In addition, accounts receivable decrease as they are collected, which increases funds in the Bank accounts, which funds are then used to generate new receivables.  There is no way to predict the exact balance of accounts receivable or funds in bank accounts as they rise and fall constantly and by corresponding amounts, which may vary depending on how long checks to take clear.
** Note:  The deficiency portion of a secured recourse claim must be added to the total amount of unsecured claims.
*** Assumes 8% Cost of liquidation.  Moreover, in a liquidation, in addition to the chapter 7 trustee's cost of liquidation, including its attorneys' and accountants' fees, chapter 11 administrative priority claims, to the extent allowed, in addition to unpaid chapter 11 ordinary course payments that are interrupted due to a conversion to and a liquidation under chapter 7,  would come ahead of any payment to prepetition unsecured creditors.
**** Note:  If this percentage is greater than the amount to be paid to the unsecured creditors on a "present value basis" under the Plan, the Plan is not confirmable unless Proponents obtain acceptance by every other creditor in the general unsecured class.

Exhibit 2

Alexander Demolition and Hauling, Inc. - CASE NO.: 2:23-bk-15815-DS
Projection for 12 months of each of next five years

| | December | January | February | March | April | May | June | July | August | September | October | November | Aggregate |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **INCOME** | | | | | | | | | | | | | |
| Business Income | $28,000.00 | $28,000.00 | $28,000.00 | $28,000.00 | $32,000.00 | $32,000.00 | $35,000.00 | $40,000.00 | $35,000.00 | $32,000.00 | $32,000.00 | $28,000.00 | $378,000.00 |
| | | | | | | | | | | | | | |
| **TOTAL MONTHLY INCOME** | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| **BUSINESS EXPENSE** | | | | | | | | | | | | | |
| Rent | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $72,000.00 |
| Insurance | $677.00 | $677.00 | $677.00 | $677.00 | $677.00 | $677.00 | $677.00 | $677.00 | $677.00 | $677.00 | | | $6,770.00 |
| Telephone | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $6,000.00 |
| Internet | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $1,800.00 |
| Cost of Goods | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $0.00 |
| Supplies | $200.00 | $200.00 | $200.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $200.00 | $200.00 | $3,100.00 |
| Payroll | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $36,000.00 |
| Payroll Taxes | $550.00 | $550.00 | $550.00 | $550.00 | $550.00 | $550.00 | $550.00 | $550.00 | $550.00 | $550.00 | $550.00 | $550.00 | $6,600.00 |
| Payroll Expenses | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $50.00 | $600.00 |
| Worker's Compensation | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $0.00 |
| Credit card Services | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $0.00 |
| So Cal Edison | $400.00 | $400.00 | $400.00 | $400.00 | $400.00 | $400.00 | $450.00 | $450.00 | $400.00 | $400.00 | $400.00 | $400.00 | $4,900.00 |
| Repairs | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $0.00 |
| Professional Fees | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $6,000.00 |
| FTB | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $0.00 |
| Debris Dump Fees | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 | $ 5,000.00 | $ 5,000.00 | $ 6,000.00 | $ 7,500.00 | $ 6,000.00 | $ 5,000.00 | $ 5,000.00 | $ 3,000.00 | $54,500.00 |
| Subcontractor Cost | $ 8,000.00 | $ 7,000.00 | $ 7,000.00 | $ 7,000.00 | $ 8,000.00 | $ 8,500.00 | $ 10,000.00 | $ 14,000.00 | $ 10,000.00 | $ 8,500.00 | $ 8,500.00 | $ 9,000.00 | $105,500.00 |
| Vehicle and Vehicle Expenses (insurance, repairs and gas) | $ 1,300.00 | $ 1,300.00 | $ 1,300.00 | $ 1,300.00 | $ 1,300.00 | $ 1,300.00 | $ 1,300.00 | $ 1,300.00 | $ 1,300.00 | $ 1,300.00 | $ 1,300.00 | $ 1,300.00 | $303,770.00 |
| **TOTAL MONTHLY EXPENSES** | $24,327.00 | $23,327.00 | $23,327.00 | $23,427.00 | $26,427.00 | $26,927.00 | $29,477.00 | $34,977.00 | $29,427.00 | $26,927.00 | $26,150.00 | $24,650.00 | $319,370.00 |
| | | | | | | | | | | | | | |
| **TOTAL NET MONTHLY CASHFLOW** | $3,673.00 | $4,673.00 | $4,673.00 | $4,573.00 | $5,573.00 | $5,073.00 | $5,523.00 | $5,023.00 | $5,573.00 | $5,073.00 | $5,850.00 | $3,350.00 | $58,630.00 |

# Exhibit 3

ALEXANDER DEMOLITION AND HAULING, INC
Case No: 2:23-bk-15815-DS

| Class | Name | Account # | Claim # | Scheduled Claim Amount | C/U/D | Filed Claims Amounts | Property Value | Allowed Claim Amount | Objection/Comment to Filed POC | Monthly Payments | Total Payments |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | **Administrative Expenses** | | | | | | | | | | |
| N/A | Subchaper V Trustee | | | | | | | $10,000.00 | Estimate - Payable on Effective Date if Awarded by Court unless claimant agrees otherwise | To be determined by Court | |
| N/A | The Orantes Law Firm, P.C. | | | | | | | $25,000.00 | Estimate - Payable on Effective Date if Awarded by Court unless claimant agrees otherwise | To be determined by Court | |
| Total | | | | | | | | | | | |
| | **Schedule D - Secured Claims** | | | | | | | | | Monthly Payment | |
| | Ford Credit | | 5 | $  21,457.00 | | $21,405.55 | $26,425.00 | $21,405.55 | Lien on vehicle. Pays interest at fixed contractual 8.90% rate. | $674.69 | $  48,577.75 |
| Total | | | | | | | | $21,405.55 | | $  674.69 | $  48,577.75 |
| | Schedule E - Unsecured Priority | | | | | | | | | | |
| | California Department of Tax & Fee | | 3 | $0.00 | | $413.00 | - | $413.00 | Pays 8% interest. 12 payments. | $  12.86 | $  462.82 |
| | Employment Development Department | | | $0.00 | | $0.00 | - | | | $  - | $  - |
| | Franchise Tax Board | | 2 | $0.00 | | $825.21 | - | $825.21 | Pays 8% interest. 12 payments. | $  25.69 | $  924.76 |
| | Internal Revenue Service | | 1 | $0.00 | | $0.00 | - | $0.00 | Pays 8% interest. IRS filed amended $0.00 claim. | $  - | $  - |
| Total | | | | | | | | $1,238.21 | | $  38.54 | $  1,387.59 |
| | Schedule F - General Unsecured Nonpriority Claims | | | | | | | | | 36 | |
| | Verizon Wireless/Cellco Partnership | | 5 | $0.00 | | $1,844.07 | | $1,844.07 | | $10.39 | $373.97 |
| | Southern California Edison Co. | | | $0.00 | | | | $0.00 | | $0.00 | $0.00 |
| | Luis Valencia | | | $30,000.00 | | | | $30,000.00 | | $169.00 | $6,083.94 |
| | Gerardo Ochoa | | 7 | $0.00 | | $500,000.00 | | $0.00 | Late claim. | $0.00 | $0.00 |
| | Felipe Davila | | | $0.00 | | $0.00 | | $0.00 | | $0.00 | $0.00 |
| | CWS | | | $  50,649.00 | | | | $50,649.00 | | $285.32 | $10,271.51 |
| | CR Rodas | | | $  73,230.00 | | | | $73,230.00 | | $412.52 | $14,850.89 |
| | Baltazar Martinez | | 9 | $150,000.00 | | | | $150,000.00 | Proof of claim has no documentary support. Debtor may object. | $844.99 | $30,419.69 |
| | Abraham Lopez | | 6 | $0.00 | | $10,000,000.00 | | $0.00 | Late claim. | $0.00 | $0.00 |
| Total | | | | $  379,860.85 | | | | $305,723.07 | | $1,722.22 | $62,000.00 |
| | Grand Total per Month (Payments to Unsecured Creditors will be Made every 3 months but reserves the right to pay monthly, if desirable. | | | | | | | | | $  2,435.46 | |